*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTIAN JORDON ELLEDGE,

      Defendant-Appellant.

UNPUBLISHED
May 6, 2021

No. 350639
Wayne Circuit Court
LC No. 18-009925-01-FH

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of operating a vehicle while intoxicated (OWI) causing death, MCL 257.625(4); OWI causing serious injury, MCL 257.625(5); reckless driving causing death, MCL 257.626(4); reckless driving causing serious injury, MCL 257.626(3); and operating with high blood alcohol content, MCL 257.625(1)(c). The trial court sentenced defendant to prison terms of 10 to 15 years for his OWI causing death and his reckless driving causing death convictions, 2 to 5 years for his OWI causing serious injury and his reckless driving causing serious injury convictions, and 2 years of probation for the operating-with-high-blood-alcohol conviction. Defendant appeals as of right. Finding no error, we affirm defendant's convictions and sentences.

## I. UNDERLYING FACTS

Defendant was convicted as a result of driving a white van into a parked vehicle, a red Impala that had stopped on the side of the road to assist another driver. Defendant was traveling at an estimated 84 miles per hour in a 55 miles per hour zone at the time of the accident. There were two occupants of the vehicle defendant struck—a woman who was unconscious for approximately seven weeks as a result of the accident, and her 18-year-old daughter who was killed. Defendant was found in the white van, and told the police that he had not been driving and did not know who had been. Defendant was taken to the hospital with a broken ankle, where his blood alcohol level was measured as .185 grams of alcohol per 100 milliliters of blood. Following a jury trial, defendant was convicted and sentenced as stated earlier. This appeal followed.

-1-

## II. FAILURE TO PRESERVE EVIDENCE

Defendant first argues that the trial court violated his constitutional rights by denying his motion to dismiss the case based on the destruction of 911 recordings and Michigan State Police Trooper Eric Brooks's evidence notebook. We disagree.

### A. STANDARD OF REVIEW

A motion to dismiss based on the failure to preserve evidence is reviewed for an abuse of discretion. *People v Jones*, 301 Mich App 566, 581; 837 NW2d 7 (2013). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). This Court reviews constitutional claims de novo. *Id*. at 566-567.

### B. ANALYSIS

The United States Constitution recognizes a criminal defendant's right "to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012). "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333, 337; 102 L Ed 2d 281 (1988). The *Youngblood* standard is distinct from the standard of *Brady v Maryland* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 US at 87. Thus, our Supreme Court has noted that the components of a "true *Brady* violation," are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731, 735 (2014). Exculpatory evidence is defined as evidence that would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994).

Here, defendant argues that the evidence was "potentially . . . exculpatory." Because defendant alleges only that undisclosed evidence may have been favorable to him, he is required to establish bad faith on the part of police. See *Youngblood*, 488 US at 58 ("Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). If the purpose of the destruction of evidence was other than to make it unavailable for a forthcoming trial, such destruction does not constitute bad faith. *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). Similarly, conduct that is merely negligent does not constitute bad faith. *Youngblood*, 488 US at 58. Rather, bad faith requires a showing of malicious or otherwise intentionally wrongful conduct. *Flones v Dalman*, 199 Mich App 396, 401; 502 NW2d 725 (1993).

In this case, defendant argues that there was no explanation for Trooper Brooks discarding his notes while knowing that defendant would want them. Defendant similarly argues that there was no explanation for Brooks's failure to preserve the 911 calls as is customary. But Brooks

testified that he discarded the notebook because it had served its purpose of helping him complete his police report. Furthermore, Brooks additionally testified that he discarded the notebook after it was full, as he did with all of his notebooks, and that he had not known any other officer to preserve full notebooks. Brooks also testified at trial that he failed to prevent the erasure of the 911 recordings because this was the first case of this nature that he had investigated, and he had not realized that those recordings had potential evidentiary value. Thus, there is no evidence that Brooks intentionally attempted to make evidence unavailable to defendant. While Brooks's conduct may have been negligent, it did not rise to the level of bad faith. Consequently, defendant has failed to carry his burden of showing a violation of his rights.[1]

In addition, defendant provides no elaboration regarding how the 911 calls or the trooper's notes would have raised a reasonable doubt about his guilt. Two witnesses who called 911 testified at the trial, as did Trooper Brooks, and all three testified about Brooks's interview of those two witnesses. Brooks also testified about speaking with defendant, and most of the contents of Brooks's notes were transferred to his police report, which was not discarded. Defendant puts forward no specific claim about any information that the jury could not consider because of the discarded notes or 911 recordings. Consequently, defendant has not carried his burden of establishing that the missing evidence was either exculpatory, or was destroyed in bad faith. The trial court thus properly denied defendant's motion to dismiss the case.

## III. DEFENDANT'S STATEMENT TO OFFICERS

Defendant argues that the trial court erred by denying his motion to suppress the statement he made to the police while at the hospital, both as violating *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966); and as being involuntary. We disagree in both respects.

## A. STANDARD OF REVIEW—INVOLUNTARY STATEMENT

"We review de novo a trial court's ultimate decision on a motion to suppress. However, we review the trial court's findings of fact for clear error." *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003) (citations omitted). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether

---

[1] We additionally note that the trial court instructed the jury that it could properly infer that the missing evidence was not favorable to the prosecution. This instruction was undoubtedly favorable to defendant and helped cure any prejudice which may have resulted from the loss of the evidence.

the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. *People v Cipriano*, 431 Mich 315, 333-34; 429 Mich 781 (1988).

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *People v Ryan*, 295 Mich App 388, 396-97; 819 N.W.2d 55 (2012).

## B. ANALYSIS

Trooper Brooks testified that he attempted to get a statement from defendant at the hospital while he was there with a search warrant for a sample of defendant's blood. Specifically, Brooks stated that he and his partner went to the emergency room where medical staff were treating defendant's ankle injury, and did so dressed in full uniform, including sidearms. After medical staff provided Brooks with a sample of defendant's blood, Brooks told defendant that the accident resulted in a fatality and defendant emotionally responded that he thought he was going to prison for the rest of his life. Defendant then requested an attorney and the police departed. Brooks stated that he did not read *Miranda* rights to defendant because Brooks was not planning to arrest him.

The Michigan Constitution provides: "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. This provision against self-incrimination is applied consistently with and "no more liberally than the Fifth Amendment of the United States Constitution." *People v Geno*, 261 Mich App 624, 628; 683 NW2d 687 (2004). "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans,* 166 Mich App 758, 761-762; 421 NW2d 285 (1988). It is well-established that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause[.]" *Colorado v Connelly*, 479 US 157, 167; 107 S Ct 515; 93 L Ed 2d 473 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id*. at 164.

The only factors which even arguably would support a claim of involuntariness in this case are that defendant was not advised of his rights and that he was being treated in a hospital. However, defendant was aware that he could terminate the interview, as he in fact did, which we discuss later in this opinion. And here, the fact that defendant was being treated in a hospital supports a finding of voluntariness. There is no indication that defendant was in extreme pain, or that officers tried to use his injured condition as a tool for obtaining a statement. See *Wolfrath v LaVallee*, 576 F2d 965 (CA 2 1978), in which the defendant had been hospitalized and administered powerful painkilling drugs: "[B]ecause there was no element of improper police tactics, because the evidence was uncontradicted that Wolfrath's condition, though perhaps weakened by his ordeal, was nonetheless strong and that he was alert and responsive, we hold that Wolfrath failed to substantiate his claim that the admission into evidence of his St. Vincent's [Hospital] confession denied him due process of law." *Id*. at 973. In this case, there is no indication

-4-

here that there was any improper police tactic. Trooper Brooks made a single statement, informing defendant that the occupant of the car defendant ran into had died. The trooper did not repeat the statement or demand a response. There is no indication that defendant had any mental or educational deficiencies, was unaware of the troopers' identities, or in any was incapable of understanding what was taking place.

Defendant argues that his statement to Trooper Brooks was coerced because in informing defendant of the victim's death, Brooks implied that defendant would be charged with a homicide. This Court has held that "a confession is involuntary if obtained by any sort of threat or violence, by any promises, express or implied, or by the exertion of any improper influence." *People v Frazier*, 270 Mich App 172, 182; 715 NW2d 341 (2006), rev'd in part on other grounds 478 Mich 231; 733 NW2d 713 (2007) (brackets, quotation marks, and citation omitted). A confession must be the product of an essentially free and unconstrained choice and be made "without intimidation, coercion, or deception." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). Courts must evaluate the totality of the circumstances in order to determine whether the confession was the result of an essentially free choice or was compelled by overcoming a defendant's capacity for self-determination. *Geno*, 261 Mich App at 628.

In this case, there is no allegation that the police in any way overbore defendant's will. Their mere presence, and true factual statement that the victim had died was not sufficient to do so. Defendant's interaction with Trooper Brooks was very brief and involved no pressuring of defendant for a response to the information. The information Trooper Brooks conveyed was serious, but did not require a response. There is simply no basis for finding that Trooper Brooks threatened defendant, either expressly or implicitly. Consequently, we are not persuaded that by offering the information about the fatality, the police overcame defendant's capacity for self-determination. Under these circumstances, we cannot conclude that defendant's statement was involuntary.

## C. STANDARD OF REVIEW—CUSTODIAL INTERROGATION

The protections provided by *Miranda* apply in the context of "custodial interrogation." *People v Cheatham*, 453 Mich 1, 10-11; 551 NW2d 355 (1996). A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant "voluntarily, knowingly[,] and intelligently" waives his or her Fifth Amendment rights. *Miranda*, 384 US at 444; *People v Daoud*, 462 Mich 621, 632-639; 614 NW2d 152 (2000).

For *Miranda* purposes, an interrogation "refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v Anderson*, 209 Mich App 527, 532-533; 531 NW2d 780 (1995), citing *Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980). "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). The totality of the circumstances is examined to determine whether the defendant was in custody when questioned. *Id*. Whether a person is in custody is determined on the basis of how a reasonable person in the accused's situation "would perceive his or her circumstances and whether the

reasonable person would believe that he or she was free to leave." *People v Roberts*, 292 Mich App 492, 505; 808 NW2d 290 (2011).

In *People v Barritt*, 325 Mich App 556, 562-563; 926 NW2d 811 (2018), this Court listed the following factors that a court should consider in determining whether a defendant was in custody: "(1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning." (Citations omitted.) "[N]o one circumstance is controlling; rather, a reviewing Court must consider the totality of the circumstances when deciding whether an individual was subjected to custodial interrogation . . . ." *Id*. at 563. "The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *People v Mendez*, 225 Mich App 381, 382, 571 NW2d 528 (1997), citing *Thompson v. Keohane*, 516 US 99, 116 S Ct 457, 133 L Ed 2d 383 (1995). This is so because an "in-custody" determination calls for application of the controlling legal standard to the historical facts. *Id*. at 112-113. Findings concerning the circumstances surrounding the giving of a statement are factual findings that are reviewed for clear error. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001).

## D. ANALYSIS

The trial court found that defendant was not in custody when he spoke to Trooper Brooks, and thus the Trooper was not required to advise him of his *Miranda* rights. After conducting our de novo review we conclude, as did the trial court, that defendant was not in custody within the meaning of *Miranda* when Trooper Brooks interacted with him at the hospital. Brooks testified that defendant was not under arrest or otherwise restrained in any way. Even though the interaction occurred while defendant was being treated in the emergency room, this Court has repeatedly held that a defendant is not in custody for *Miranda* purposes simply by being confined to a hospital bed when questioned. See, e.g., *People v Kulpinski*, 243 Mich App 8, 24-26; 620 NW2d 537 (2000); *People v Peerenboom*, 224 Mich App 195, 197-198; 568 NW2d 153 (1997).[2]

---

[2] The trial court additionally stated that defendant was "free to leave" after the officer had spoken to him, which is not correct as a factual matter, as defendant was hospitalized for an ankle injury. The correct analysis when a defendant is physically unable to walk away from an officer, or simply chooses not to because, for example, doing so would interfere with a defendant's travel plans, is whether the person was free to terminate the encounter. See *Florida v Bostick*, 501 US 429, 436; 111 S Ct 2382; 115 L Ed 2d 389 (1991) (defining "seizure" for fourth amendment purposes regarding an investigative detention as "whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter."). For example, "when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter." *Id*. at 435-436. Indeed, in *Bostick*, someone in the defendant's situation "would not have felt free to leave the bus even if the police had not been present. Bostick's movements were 'confined' in a sense, but this was the natural

In light of our holding that defendant was not in custody for *Miranda* purposes, we need not consider the prosecution's additional argument that Trooper Brooks's statement to defendant did not constitute "interrogation."

## IV. SUFFICIENCY OF EVIDENCE OF IDENTITY

Defendant argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he was the driver of the van that caused the accident. We disagree.

## A. STANDARD OF REVIEW

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of the evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992) (citation and quotation marks omitted). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821

---

result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive." *Id*. at 436. The same is true of defendant's treatment in the hospital in the present case. Defendant was unable to leave, due to his condition, and likely was uninterested in doing so in any event, as he was receiving treatment. Nevertheless, he was free to terminate the interview, as he did after his one statement, at which point the officers left and he remained in the hospital.

Additionally, an investigative detention is triggered by a lesser intrusion than a formal arrest, see *United States v Mendenhall*, 446 US 544, 553-554; 100 S Ct 1870; 64 L Ed 2d 497 (1980); and thus if the police interaction did not rise to the level of a fourth amendment investigative detention, it necessarily could not have been the equivalent of an arrest. See *JDB v North Carolina*, 564 US 261, 270; 131 S Ct 2394; 180 L Ed 2d 310 (2011) (holding that determining whether an individual was in custody for *Miranda* purposes is tantamount to determining whether there was "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest."). Because he had the ability to end the interview, and in fact did so, defendant was not in custody for *Miranda* purposes; Trooper Brooks thus was not required to advise him of his *Miranda* rights.

(2019) (citations omitted). Similarly, "[c]ircumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Finally, "[d]ue process requires the prosecution in a criminal case to introduce sufficient evidence to justify a trier of fact in its conclusion that the defendant is guilty beyond a reasonable doubt." *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998). As such, a conviction based on insufficient evidence violates due process. See *id*.

## B. ANALYSIS

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[P]ositive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Additionally, circumstantial evidence, without more, is sufficient to establish the identity element of an offense. See *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016) ("[A]lthough the identity evidence is circumstantial . . . there was sufficient evidence for a rational fact-finder to conclude that defendant was the perpetrator.").

In this case, a witness was parked on the side of the road because his car had been hit; the witness was looking at the red Impala that had pulled over to assist him, when he saw a white van crash into the back of the red Impala. The witness testified that he saw a male driver of the van move to the back seat after the collision; the driver was the only person in the van; and no one entered or exited the van between the time of the collision and the arrival of the police. Trooper Brooks spoke to that witness, and attended to the red Impala before he approached the white van and saw defendant in the rear driver's-side seat. According to Brooks, when he opened the van door defendant provided his name and date of birth; no one else was present in the vehicle. Then Brooks spoke to defendant at the hospital a few hours later, and, as discussed earlier, defendant told Brooks that he thought he would go to prison for the rest of his life after learning that an occupant of the red Impala had died.

This evidence supported the jury's determination, beyond a reasonable doubt, that defendant was the driver of the white van. The accounts of the eyewitness and Trooper Brooks gave rise to the reasonable inference that defendant was the only occupant of the subject van at the time of the crash and, therefore, that he had been the driver. Furthermore, defendant's statement that he would be going to prison for life gave rise to the reasonable inference that defendant was acknowledging his criminal liability for what had happened. Thus, the prosecution presented sufficient evidence to establish the identify element of defendant's convictions.

## V. DOUBLE JEOPARDY

Defendant asserts that his convictions for OWI and reckless driving causing death constituted multiple punishments for the same offense; he makes the same argument regarding his convictions for OWI and reckless driving causing serious impairment of a body function. We disagree.

A.  STANDARD OF REVIEW

"A double-jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

B.  ANALYSIS

The Fifth Amendment of the United States Constitution protects a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ."  US Const Amend V. Likewise, our state Constitution.  Const 1963, art 1, § 15 ("No person shall be subject for the same offense to be twice put in jeopardy.").  Michigan's double jeopardy provision was intended to be "construed consistently with Michigan precedent and the Fifth Amendment."  *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010).  The prohibition of double jeopardy provides three related protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense."  *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004).  Defendant's argument involves the third protection.

The test for whether two offenses are the same for purposes of double jeopardy analysis is the "abstract legal elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).[3] *Ream*, 481 Mich at 234.  The test "is whether each provision requires proof of a fact which the other does not."  *Blockburger*, 284 US at 304.  Thus, "multiple punishments are authorized if each statute requires proof of an additional fact which the other does not . . . ."  *Ream*, 481 Mich at 228 (quotation marks and citation omitted).  Nonetheless, in *People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015), our Supreme Court stated that the "abstract legal elements" test is utilized only after the statutory language is examined to determine whether the Legislature intended to authorize multiple punishments.  There is no double jeopardy violation if "a legislature specifically authorizes cumulative punishment under two statutes," but there is a double jeopardy violation if "the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments."  *Id*. at 18.  The language of the statute, however, "does not always clearly indicate [the Legislature's] intent with regard to the permissibility of multiple punishments."  *Id*. at 19.  In those circumstances, courts must rely solely on the abstract legal elements test to determine whether "it is impossible to commit the greater offense without also committing the lesser offense."  *Id*.[4]

---

[3] *Blockburger*'s double-jeopardy test also sometimes is referred to as the "same elements" test. See, e.g., *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007).

[4] We note that defendant argues that the double-jeopardy standard espoused in *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984), overruled by *Smith*, 478 Mich at 292, which required courts to examine the type of harm statutes were designed to prevent, is controlling in this case.  But our Supreme Court overruled *Robideau* 14 years ago in *Smith*, 478 Mich at 292, and returned Michigan to the *Blockburger* abstract legal elements test.  No doubt defendant's citation to, and argument

Neither MCL 257.625 nor MCL 257.626 contains a general provision about cumulative punishments, nor a specific one in relation to the other.[5] We thus resort to the abstract legal elements test. See *id.*

Each of defendants' alcohol-related convictions require a finding that he was impaired while operating a vehicle. See MCL 257.625(1), (3), (4)(a), (5)(a), and (8).[6] Such a showing is

---

based on, *Robideau* was in error or merely the result of an oversight given that it has long since been overruled. We make note of it, however, so that such mistakes may be avoided in the future.

[5] Indeed, defendant makes no argument regarding this question and, therefore, the issue is abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

[6] OWI causing death, MCL 257.625(4)(a), criminalizes, in relevant part:

> (4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of a crime . . . .

Subsections 1, 3, and 8 provide, in relevant part:

> (1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated.

> \* \* \*

> (3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of alcoholic liquor, a controlled substance, or other intoxicating substance, or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.

> \* \* \*

> (8) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person has in his or her body any amount of a controlled substance listed in schedule 1 under section 7212 of the public health code, 1978 PA 368, MCL 333.7212, or a rule promulgated under that section, or of a controlled substance described in section 7214(a)(iv) of the public health code, 1978 PA 368, MCL 333.7214.

not necessary for defendant's reckless driving-related convictions. See MCL 257.626(2)-(4).[7] Similarly, defendant's reckless driving-related convictions require a showing that he operated a vehicle "in willful or wanton disregard for the safety of persons or property," see MCL 257.626(2), which is not an element of his alcohol-related convictions. Thus, defendant's alcohol-related convictions and reckless driving-related convictions each "requires proof of an additional fact which the other does not" and, therefore, being sentenced for all of them does not violate double jeopardy. See *Ream*, 481 Mich at 228 (citation omitted).

## VI. SENTENCING

Defendant argues that his OWI and reckless driving causing death sentences of 10 to 15 years' imprisonment were unreasonable. We disagree.

### A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "Resentencing will be required when a sentence is determined to be unreasonable." *Id.* "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017)

---

Finally, OWI causing serious impairment of a body function, MCL 257.625(5)(a), criminalizes, in relevant part:

> (5) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes a serious impairment of a body function of another person is guilty of a crime . . . .

[7] Reckless driving causing death, MCL 257.626(4), criminalizes, in relevant part:

> (4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony . . . .

Subsection provides

> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Finally, reckless driving causing serious impairment of a body function, MCL 257.626(3) criminalizes, in relevant part:

> (3) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes serious impairment of a body function to another person is guilty of a felony . . . .

(*Steanhouse II*). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

## B. ANALYSIS

"[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn* [435 Mich 630; 461 NW2d 1 (1990), abrogation recognized by *Steanhouse II*, 500 Mich at 453]." *Steanhouse II*, 500 Mich at 459-460 (citation omitted). "The nature of the offense and the background of the offender" must be taken into account when making this assessment. *Id*. at 472, quoting *Milbourn*, 435 Mich at 651.

Trial courts must consult the sentencing guidelines when imposing a sentence, but " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Id*. at 474-475, quoting *Milbourn*, 435, Mich at 661. In imposing an out-of-guidelines sentence, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines,] would have been." *People v Dixon-Bey*, 321 Mich App 490 at 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Nevertheless, our Supreme Court has expressly rejected dicta suggesting a "presumption[] of unreasonableness for out-of-guidelines sentences." *Steanhouse II*, 500 Mich at 474. Rather, the principle of proportionality simply "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; see also *Steanhouse II*, 500 Mich at 474.

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [*Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted).]

"However, this is not to say that the trial court must explain why it chose a twelve-month departure as opposed to an eleven-month departure (or indeed as opposed to any one of countless other potential departures). Rather, the trial court must simply explain why the actual departure that it imposed is justified." *People v Babcock*, 469 Mich 247, 260 n 14; 666 NW2d 231 (2003). See also *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

"Other factors listed by this Court in *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) [(*Steanhouse I*)], rev'd in part on other grounds by [*Steanhouse II*, 500 Mich 453], include 'the defendant's misconduct while in custody, the defendant's expressions of remorse, and

the defendant's potential for rehabilitation." *Dixon-Bey*, 321 Mich App at 525 n 9 (citations omitted). Indeed, it is well-established that such lack of remorse is an appropriate consideration for purposes of proportionality. See *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995); *People v Wesley*, 428 Mich 708; 411 NW2d 159 (1987).

Moreover, in evaluating whether a trial court improperly punished a defendant for maintaining his innocence, this Court has focused on three factors: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009) (quotation marks and citation omitted). "[I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal." *Wesley*, 428 Mich at 713 (opinion by ARCHER, J.).

The trial court sentenced defendant to a minimum term of 10 years (120 months) in prison; the applicable sentencing guidelines range was 50 to 100 months. Thus, defendant's sentence exceeded the recommended range by 20 months. Defendant argues that his sentence was unreasonable, meaning that it violated the principle of proportionality, in large part because the trial court held defendant's refusal to admit guilt against him.

At sentencing, defendant expressed sympathy for the victim's family. With regard to his own actions, he stated, "I made bad choices, got in a car with the wrong people and, and I guess I had been drinking." Defendant also stated,

> Deep down I wish I could take everything back or, or find out what happened and give you all somebody to blame. But it's just not possible. I don't know who I got in the car with. And I apologize about that. I know you guys found me guilty of the crime, but I did not commit [it].

Defendant concluded, "I'm just . . . guilty of being at the wrong place at the wrong time." In imposing sentence, the trial court referenced defendant's explanation that he was in the wrong place at the wrong time and his having told the police that he was not the driver, and contrasted that with the jury's finding that defendant was the driver and that he was intoxicated. The court then expressed concern that defendant continued to deny responsibility for the accident and its severe consequences.

After carefully reviewing the record, we conclude that defendant did maintain his innocence, but there is no record that the trial court attempted to have defendant admit his guilt, and no suggestion that defendant's sentence would have been reduced if he had done so. The trial court did discuss the jury's finding that defendant was driving the vehicle while defendant continued to maintain that he did not, but the trial court did not expressly mention that defendant was refusing to admit his guilt. Rather, the trial court highlighted that the evidence persuaded the jury that defendant was driving while intoxicated, and contrasted that with defendant's claimed remorse, in which defendant admitted no more than that he was at the wrong place at the wrong time. The trial court specifically commented on defendant's minimal expression of responsibility

in light of the gravity of the jury's conclusions. Consequently, the trial court did not err by considering defendant's lack of remorse at sentencing; it similarly did not impermissibly consider defendant's failure to admit guilt. Thus, as in *Wesley*,

> the sentencing judge neither asked defendant to admit his guilt nor offered him a lesser sentence if he did. . . . The court never indicated in any manner that an admission of guilt would reduce the defendant's sentence. If there had been such an indication, then the sentence would have been improperly influenced by the defendant's claim of innocence. Instead, the court focused on the history and character of the defendant as evidenced from the presentence report in determining his potential for rehabilitation. [*Id.* at 716; see also *id.* at 726 (Cavanagh, J., concurring) ("[T]he trial court made clear that the defendant's assertion of innocence was not a factor which affected the length of the sentence imposed."); *id.* at 727 ("Following a plea of guilty or a trial, a convicted defendant stands before the sentencing judge no longer clothed with the presumption of innocence. While a defendant is certainly free to continue to assert innocence, a sentencing judge should not be required to tip-toe through the metaphysical distinctions required to separate that continued assertion from a lack of remorse.").]

428 Mich at 713 (opinion by ARCHER, J.); *Payne*, 285 Mich App at 194.

We now turn to whether defendant's sentence violated the principle of proportionality as a whole. The record establishes that the trial court soundly explained its rationale for imposing the above-guidelines sentence in this case. The trial court discussed the tragic severity of the case, including the catastrophic injury and loss of life defendant's actions caused to two different people. The trial court also discussed defendant's lack of acknowledgment of responsibility for the accident, citing defendant's explanation that he was simply in the wrong place or got in the wrong vehicle with an unknown driver, or that he "guess[ed]" he was drinking and wished he could find someone to blame. The contrast between the horrific results of the accident and defendant's acknowledgment only of his mere presence in the vehicle—as well as defendant's unserious and dismissive explanation of his role in the matter—was striking. The trial court further noted that defendant had a substantial history of driving violations, including for impaired driving. Defendant's driver's license also was suspended at the time of the accident. The lack of remorse and failure to accept responsibility, combined with the other driving violations, suggest that it would be a challenge for defendant to achieve rehabilitation; and it is well-established that such lack of remorse is an appropriate consideration for purposes of proportionality. See *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995); *People v Wesley*, 428 Mich 708; 411 NW2d 159 (1987). The trial court additionally implied that society needed to be protected from defendant's behavior. Thus, the trial court justified its determination that an out-of-guidelines sentence above the advisory guidelines range was "proportionate to the seriousness of the circumstances surrounding the offense and the offender," *Milbourn*, 435 Mich at 636. The trial court's sentencing decision thus was well within its discretion.

-14-

## VII.  CONCLUSION

The trial court properly denied defendant's motion to suppress the statement he made to Trooper Brooks, and there was sufficient evidence as to identity to support defendant's conviction. His sentences were proportionate and did not violate his right against double jeopardy. Consequently, for the reasons stated in this opinion, defendant's convictions and sentences are affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick